## W. O. HALL v. F. C. HALL.

### (Filed 19 May, 1920.)

**1. Libel and Slander, Distinguished.**

Libel or written slander is distinguished from oral slander, in that the former is actionable if it tends to render the party of whom it is written, liable to disgrace, ridicule, or contempt, and it need not impute any definite infamous crime.

**2. Libel and Slander—Intention—Evidence—Questions for Jury—Damages—Punitive Damages.**

A letter written to the married daughter of the plaintiff, in an action for libel, stated "I hate to expose him, as he is my brother and your father, but he is trying to expose me, and I will have a suit for him when he comes over," that he had taken from another a load of fodder from his stack in the darkness of night, and had put it in his wagon and hauled it off; that his half sister had been telling "some ugly tales on him" of his making her sit on his lap, hugging her, and wanting her to hug him; that he had given her some articles of apparel that he should have given his own wife and daughters; that the half sister had said "he had cut a shine over her, and she was afraid of him," etc.: *Held*, sufficient for the determination of the jury of whether the defendant had intended to charge the plaintiff with the crimes of stealing and attempted incest with his half sister, and of malice sufficient upon which punitive damages may be awarded by them in addition to actual or compensatory damages. The charge of the judge in this case is approved.

**3. Appeal and Error—Objections and Exceptions—Unanswered Questions.**

Upon exception to the ruling out of questions asked a witness upon the trial, it must be shown what the answers were expected to have been, so that the Court may pass upon their relevancy and materiality on appeal, or the exception will not be considered.

APPEAL by defendant from *McElroy, J.*, at the July Term, 1919, of ASHE.

This is an action to recover damages for the publication of a libel of and concerning the plaintiff, contained in a letter written by the defendant to the married daughters of the plaintiff in the following words: "I hate to expose him as he is my brother and your father, but he is trying to expose me, and I will have a suit for him when he comes over,

instead of bringing feed for his cattle when he was in Wilkes he went to a man's stacks in the darkness of the night and got him a load of fodder, put it in his wagon, and hauled it off. I am sorry he had such little judgment as that; and Cora Hall is telling ugly tales on him and says he tried to and made her sit on his lap and hugged her, and wanted her to hug him. When he went back home he bought her a nice sweater and sent her. We think he ought to have bought you girls a sweater apiece or .your ma. He was never that free-hearted with his whole sisters, let alone other people. We think he ought to have bought his little grandchildren sweaters and such like, and help you girls with what he had to give Cora Hall, for she had plenty of money and clothes, too. She said he cut such a shine over her she got afraid of him. Of course I reckon he told your ma about it. I hope you will not think hard of me for writing the truth, for I can prove what I have written."

Cora was a half sister of the plaintiff, and was dead at the time of the trial.

The plaintiff in his testimony gave the following account of his getting the fodder:

"I went to Wilkesboro, and was gone three nights, and on my way back I stopped at my brother Felix Hall's store a little after night, don't know exactly the time, and there was snow on the ground; I got out of my wagon, rapped on the door and hallowed, but there was no answer. I wanted to buy some feed, and I went around to Felix Hall's fodder stack, took out two bunches, put it in my wagon, and went to Billings and stayed all night. I did not see F. C. Hall till 27 December, about two months after I got the fodder and stayed all night with him. I told him I took a little of his fodder to feed my cattle."

He also denied taking any liberty with his half sister, Cora.

The defendant admitted the publication of the letter, but denied that he made or intended to make a charge of larceny or of attempted incest, and he alleged that the words written by him were true.

There was a motion for judgment of nonsuit, which was overruled, and defendant excepted.

The other exceptions will be referred to in the opinion.

The jury returned the following verdict:

"1. Did the defendant write and publish of and concerning the plaintiff the language or words in substance as set out in paragraph two of the complaint? Answer: 'Yes.'

"2. Did he mean thereby to charge the plaintiff with larceny? Answer: 'Yes.'

"3. Did he mean thereby to charge the plaintiff with an attempt to commit the crime of incest? Answer: 'Yes.'

"4. Were said words written with malice towards the plaintiff? Answer: 'Yes.'

"5. Were the charges made in the written words contained in paragraph two of the complaint true? Answer: 'No.'

"6. What damage is the plaintiff entitled to recover of the defendant? Answer: '$1,000.' "

Judgment for the plaintiff, and defendant appealed.

*R. A. Doughton and Bowie & Austin for plaintiff.*
*F. B. Hendren and G. L. Park for defendant.*

ALLEN, J. The motion for nonsuit is on the ground that the letter written by the defendant does not, by fair intendment, charge the plaintiff with the crime of larceny, or with an attempt to commit the crime of incest, and that if it does so the plaintiff admitted the truth of the charges contained in the letter.

The defendant fails to note the distinction between oral and written slander, or libel, the latter being actionable if it tends "to render the party liable to disgrace, ridicule, or contempt, and it need not impute any definite infamous crime. *Simmons v. Morse,* 51 N. C., 7." *Brown v. Lumber Co.,* 167 N. C., 11.

But the letter goes further than this, and is clearly susceptible of the meaning that the defendant intended to charge the plaintiff with crime, and it was for the jury to say in what sense the language was used.

In reference to the charge of larceny, *McCall v. Sustair,* 157 N. C., 181, bears a close resemblance to the present action.

Here the defendant wrote "he went to a man's stacks in the darkness of the night and got him a load of fodder," and in the *Sustair case* the defendant said his brother "ketched McCall taking some pokes of cotton out of his cotton patch the night before," and it was held that the judge "properly charged the jury that the burden was upon the plaintiff to find whether the words in view of the circumstances under which they were used naturally imported that the persons spoken of had committed the crime of larceny, and that the words were used with the intent to charge the plaintiff with larceny in uttering said words."

This is stronger than the *Sustair case* in that there is evidence of express malice in the letter, and the charges against the plaintiff are preceded by the statement, "I will have a suit for him when he comes over," which would incline one to the belief that the defendant intended to charge the plaintiff with crime, and to injure him.

Nor is it true that the plaintiff admitted the truth of the charges made against him.

He expressly denied any misconduct with his half sister, Cora, and while he admitted taking the fodder, his explanation of the transaction rebutted the idea of the presence of the felonious intent, which is an essential element of larceny.

We are therefore of opinion the motion for judgment of nonsuit was properly denied, and this covers all of the exceptions relied on in the brief, except to the refusal to permit certain witnesses to answer, when asked as to a conversation with Cora Hall, and an exception to the charge permitting the jury to assess punitive damages.

The following is representative of the three exceptions taken to the refusal to allow witnesses to speak of conversations with Cora Hall.

"Q. Did you ever hear Cora make any statement about W. O. Hall going to her home?

"Plaintiff objects; objection sustained, and defendant excepts.

"The defendant's counsel states that the foregoing question is asked for the purpose of mitigating damages."

It will be noted that there is no statement in the record that the answer to the question would be "Yes," nor is the purport of the conversation shown, and so far as we can see, of a new trial should be ordered, the witness might deny she had any conversation with Cora Hall, and the exceptions cannot therefore be considered.  *Blue v. Brown,* 178 N. C., 336.

The charge on punitive damages is in accord with the authorities. *Fields v. Bynum,* 156 N. C., 418; *Ivie v. King,* 167 N. C., 177.

His Honor instructed the jury on the fourth issue as follows:  "The burden of this issue is also on the plaintiff to satisfy you by the greater weight of the evidence that the words written were written with malice toward the plaintiff.  What is malice, gentlemen of the jury?  Malice is ill-will, spite.  Did the words charge these crimes, and if so, were they written because the defendant had ill-will or spite toward the plaintiff?  If you find by the evidence, and from its greater weight, that the words were written with malice, that is, was it ill-will and spite towards the plaintiff? then you will answer this fourth issue 'Yes.'  If you do not so find, you will answer it 'No.' "  And on the fifth, after considering compensatory damages:  "In addition, gentlemen of the jury, to actual damages, if you answer the fourth issue 'Yes,' that is, that the words were written with malice toward the plaintiff, you may allow punitive damages.  Punitive damages, sometimes called 'smart money,' are allowed in case where the injury is inflicted in a malicious, wanton, and reckless manner.  The defendant's conduct must have been malicious or wanton, displaying a spirit of mischief toward the plaintiff, or of reckless and criminal indifference to his rights, and when these elements are present damages commensurate with the injury may be

allowed by way of punishment of the defendant, but these damages are awarded on the grounds of public policy, for example's sake and not because the plaintiff has a right to the money. So, in addition to the actual damages, gentlemen of the jury, if you find that the plaintiff is entitled to recover damages at all you may allow punitive damages, that is, damages by way of punishment to the defendant for his conduct. In regard to this matter, and in answering the issue, you may find, first, what actual damages he has sustained, and then add to that such amount as you may find that the defendant shall be punished in this case by way of punitive damages, and the two together will be your answer to the issue, that is, if you decide to allow punitive damages against the defendant."

The charge is clear and accurate, and properly safeguarded the rights of the defendant.

No error.