E. J. KINDLEY v. H. A. PRIVETTE.

(Filed 24 November, 1954.)

**1. Pleadings § 15—**

A complaint will not be overthrown by demurrer unless it is fatally defective, and if in any portion it alleges facts sufficient to constitute a cause of action, demurrer should be overruled.

**2. Libel and Slander § 2—**

The words "libelous *per se*" mean actionable *per se,* that is, actionable without allegation of special damage.

**3. Same—**

Written words may be libelous *per se* even though such words, if spoken, would not be slanderous *per se; a fortiori* words which would be slanderous *per se*, when written or printed, are libelous *per se*.

**4. Same: Libel and Slander § 10—Complaint held to allege libel actionable per se.**

The complaint alleged that plaintiff is a licensed and ordained minister of the Baptist church and was serving as a guest preacher in Baptist churches, that defendant minister, with malice, published in the church bulletin words understood to refer to plaintiff to the effect that plaintiff had been a disorderly member of the church and that he was unwilling to co-operate in maintaining peace and right spirit therein, that he caused trouble amounting to continuous upheaval, disrupting the peace and harmony of the church, and therefore, was excluded therefrom, and that such words injured plaintiff in his ministerial profession. *Held:* The complaint alleges a libel actionable *per se*, and defendant's demurrer to the complaint was properly overruled.

**5. Libel and Slander § 6—**

The statutory provision relating to notice and an opportunity for retraction are germane solely to the issue of punitive damage and have no bearing upon the sufficiency of the facts alleged in the complaint to constitute a cause of action for libel. G.S. 99-1 *et seq.*

APPEAL by defendant from *Sharp, Special J.,* March Term, 1954, of CABARRUS. Affirmed.

Civil action for damages for defamation, heard on demurrer to complaint.

The complaint, in substance, alleges:

1. Plaintiff was a member, *bona fide* and in good standing, of Southside Baptist Church of Concord, N. C., of which defendant is pastor. This church is a duly organized congregational unit of the Orthodox Baptist Church. It is a member of the Cabarrus County Association of Baptist Churches, the North Carolina State Baptist Convention, and the Southern Baptist Convention; and, as such, is bound by, and is subject to, the rules and regulations thereof.

2. Plaintiff is a regularly licensed and ordained minister of the Orthodox Baptist Church, accepted as such by said association and conventions; and he has served as regular pastor in Baptist churches in said association and conventions and as guest preacher in other Baptist churches therein.

3. Plaintiff has served as guest preacher, leader of mid-week prayer service, teacher of the Men's Bible Class, and generally as a leader in the Sunday School and church activities of the Southside Baptist Church, and on occasion has been commended by defendant, through the church bulletin, for his "sound and inspiring messages," and had gained "the

love, affection, confidence and respect of a large majority of the congregation of Southside Baptist Church."

4. In this situation, the defendant, "seized with a tantrum of fear and a fit of jealousy," and with malice, resolved to destroy plaintiff "in the eyes of both the clergy and laity of the Baptist Church."

5. The first step in defendant's course of action was to attempt to exclude plaintiff from membership in the Southside Baptist Church. So, at a congregational meeting on Sunday, 6 September, 1953, defendant acting as Moderator, a resolution, instigated by defendant and maneuvered by a few personal friends of defendant, was adopted, excluding plaintiff from membership. No notice or warning had been given plaintiff, nor had charges been preferred against plaintiff, nor did the congregation have prior notice that such resolution would be considered. And after the resolution had passed, a motion was made and carried by a big majority vote of the congregation that plaintiff be granted the right to take the floor to defend himself against the charges made; but defendant, as Moderator, arbitrarily refused to comply therewith on the ground that plaintiff had been excluded, was no longer a member and had no right to be heard. In relation to these events, it is alleged explicitly that the purported exclusion of plaintiff was and is "null and void and of no effect."

6. On Sunday, 13 September, 1953, defendant "issued or caused to be issued" a printed or mimeographed church program and bulletin, which was distributed among the members and visitors of Southside Baptist Church, in which, under the head of "Church Discipline," defendant cited and quoted Scripture passages, the purport being, according to defendant's contention, that the preliminary procedure outlined in Matt. 18:15-17 for treating with a brother who causes offense relates to relations between brethren and does not bear upon the exclusion of a member from the church.

7. Immediately following, under the caption, "Note," defendant makes application of the premise he had undertaken to establish by Scripture, including these excerpts: "At no place in the New Testament is it ever mentioned that one is to be granted a 'Church Trial' in *disorderly* cases." ". . . any Baptist Church at any time can withdraw itself from any member . . . for *disorderly conduct* . . ." "In the recent case in question the Deacons did reason with the *disorderly brother* and ask his cooperation in maintaining peace and the right spirit in the church. It did no good and the church had no other choice unless it wants *to tolerate a continued upheaval* and *trouble making*. God will not bless a church that *tolerates such people* in membership. Any *other* person *who continues to disrupt the peace and harmony* of the church and who refuses

to cooperate with the church ought to either get out of the church or be excluded from the membership." (Italics added.)

8. This bulletin also gave notice that plaintiff had been excluded from membership, and that letters of dismission had been granted to members of plaintiff's family and other persons.

9. Defendant mailed a copy of this bulletin to the following: Moderator of the Cabarrus County Association of Baptist Churches; the 1952 Moderator of said Association; each Baptist preacher in said association; a number of other Baptist preachers in other counties and even beyond the State.

10. By reason of the foregoing false, malicious and wanton charges, as calculated and intended, defendant has embarrassed, humiliated and disgraced the plaintiff and has brought him into disrepute among his fellow members of the Baptist clergy and laity.

11. Defendant well knew of plaintiff's status as a professional man and that plaintiff depended in large measure upon his ministerial profession for a livelihood for himself and family.

12. As the result of the false, malicious and wanton charges so made and published by defendant, plaintiff "has not received a single invitation to conduct religious services in any church, anywhere"; and plaintiff has suffered actual damages of $10,000.00, special damages of $10,000.00, and is entitled to recover $10,000.00 as punitive damages.

Defendant demurred on the ground that the complaint does not state facts sufficient to constitute a cause of action. The demurrer was overruled. Defendant excepted and appealed.

*C. M. Llewellyn, B. W. Blackwelder, and M. B. Sherrin for plaintiff, appellee.*

*R. Furman James, L. E. Barnhardt, Hartsell & Hartsell, and William L. Mills, Jr., for defendant, appellant.*

BOBBITT, J. The demurrer tests the sufficiency of the complaint. The rules applicable in so testing the complaint have been often stated and are well settled. *Pressly v. Walker*, 238 N.C. 732, 78 S.E. 2d 920, and cases cited. The complaint must be fatally defective. If any portion of it alleges facts sufficient to constitute a cause of action, the complaint will stand. *Cummings v. Dunning*, 210 N.C. 156, 185 S.E. 653. This explains, in part, why we have not undertaken to include all allegations of the complaint in the above statement of facts.

The complaint, apart from other allegations, alleges that defendant published and circulated a church bulletin, which, in explanation of the exclusion (or attempted exclusion) of plaintiff from the membership of the Southside Baptist Church, contained statements of and concerning

plaintiff to the effect that plaintiff had been a disorderly member thereof in the sense that he was unwilling to cooperate in maintaining peace and the right spirit in the church but caused trouble amounting to a continuous upheaval and disrupted the peace and harmony of the church and therefore was excluded therefrom. Do these allegations, considered in relation to allegations as to plaintiff's professional status, and the allegations as to their damaging effect upon his reputation and means of livelihood, and the allegations as to the embarrassment, humiliation and disgrace caused thereby, state a cause of action?

"The publication of any libel is actionable *per se,* that is irrespective of whether any special harm has been caused to the plaintiff's reputation or otherwise. Such a publication is itself an injury (see sec. 7) and therefore a sufficient ground for recovery of at least nominal damages." Restatement of the Law, Torts, sec. 569.

As stated in 33 Am. Jur., Libel and Slander sec. 6: "Much that, when spoken, is not actionable without an averment of extrinsic acts or an allegation and proof of special damages is, when written or printed, actionable *per se.*"

And as stated in 53 C.J.S., Libel and Slander sec. 13: "As a general rule, except as changed by statute, words written or printed may be libelous and actionable *per se,* that is, actionable without any allegations of special damages, if they expose or tend to expose plaintiff to public hatred, contempt, ridicule, aversion, or disgrace, induce an evil opinion of him in the minds of right thinking persons, and deprive him of their friendly intercourse and society, regardless of whether they actually produce such results. As otherwise stated, words published are libelous if they discredit plaintiff in the minds of any considerable and respectable class in the community, taking into consideration the emotions, prejudices, and intolerance of mankind; and it has been held that it is not necessary that the published statements make all or even a majority of those who read them think any the less of the person defamed, but it is enough if a noticeable part of those who do read the statements are made to hate, despise, scorn, or be contemptuous of the person concerning whom the false statements are published."

The phrase "libelous *per se,*" used extensively, has been criticized as inexact. Southern California Law Review, Vol. 17, p. 347 *et seq.* While this phrase appears in our decisions, the words are used in the sense of actionable *per se. Flake v. Greensboro News Co.,* 212 N.C. 780, 195 S.E. 55.

Words characterizing plaintiff as a trouble maker and as one who stirs up dissension and strife within the church are reasonably calculated and naturally tend to cause the Baptist brethren, clergy and laity alike, to cease to avail themselves of his professional services and to avoid and

withdraw from further contacts and association with him. If a minister has such reputation, experience teaches that others, clergy and laity alike, are disposed to be shy and wary of him as a minister and otherwise. The words in the bulletin "Note," if the facts are as alleged, are defamatory and if spoken would be slanderous *per se*. *A fortiori,* they constitute a basis for an action for libel. *Pentuff v. Park,* 194 N.C. 146, 138 S.E. 616; 33 Am. Jur., Libel and Slander sec. 75; 53 C.J.S., Libel and Slander sec. 39.

In *Simmons v. Morse,* 51 N.C. 6, the trial court intimated an opinion that the paper (a letter) was not a libel *per se;* and thereupon plaintiff submitted to nonsuit and appealed. The letter, written by defendant, addressed to plaintiff, was read by defendant to another person, who was requested to carry it and did carry it to plaintiff. It contained these alleged defamatory statements: "You have been trying to defraud me a long time, and has done it all you had power to do for the last ten or twelve years." *Battle, J.,* writing the opinion for the Court, says: "A libel, as applicable to individuals, has been well defined to be a malicious publication, expressed either in printing or writing, or by signs, or pictures, tending either to blacken the memory of one dead, or the reputation of one alive, and expose him to public hatred, contempt or ridicule. See 2 Kent's Com., 16, and the cases there referred to. The distinction between written and verbal slander is so well known, that it is unnecessary to refer to it more particularly than to say, that, any written slander, though merely tending to render the party liable to disgrace, ridicule, or contempt, is actionable, though it do not impute any definite infamous crime punishable in the temporal courts."

The distinction has been recognized in our later cases. *Brown v. Lumber Co.,* 167 N.C. 11, 82 S.E. 961; *Pentuff v. Brown, supra; Hall v. Hall,* 179 N.C. 571, 103 S.E. 136; *Paul v. Auction Co.,* 181 N.C. 1, 105 S.E. 881; *Flake v. News Co., supra.* And in *Flake v. News Co., supra,* it is stated by *Barnhill, J.* (now C. J.), that a publication is actionable *per se,* "if, when considered alone without innuendo: . . . (3) it tends to subject one to ridicule, contempt, or disgrace, or (4) it tends to impeach one in his trade or profession," citing authorities. It seems clear that the bulletin published and circulated by defendant contains defamatory language within the scope of both (3) and (4). And, as for innuendo, it is alleged very plainly that the defamatory words so published by defendant referred to plaintiff and were so understood by persons reading the bulletin and held the plaintiff up as "a formenter of trouble and discord."

As to defendant's contention that plaintiff fails to allege that he gave notice of the alleged defamatory statement and thereby failed to afford opportunity for retraction by defendant, in accordance with "London Libel Law," G.S. 99-1 *et seq.,* a sufficient answer is that, if applicable,

these statutory provisions relate solely to punitive damages and so have no bearing upon the sufficiency of the facts alleged to constitute a cause of action. *Osborn v. Leach,* 135 N.C. 628, 47 S.E. 811; *Paul v. Auction Co., supra.*

For the reason stated, the judgment overruling demurrer is

Affirmed.