BETTY B. ARNOLD v. MAX W. SHARPE AND COMMUNITY BANK OF CAROLINA

No. 103

(Filed 5 February)

**1. Libel and Slander § 1.1— three classes of libel**

The three classes of libel are (1) publications obviously defamatory which are called libel *per se*, (2) publications susceptible of two interpretations one of which is defamatory and the other not, and (3) publications not obviously

defamatory but when considered with innuendo, colloquim, and explanatory circumstances become libelous, which are termed libels *per quod.*

**2. Libel and Slander § 2— libel per se defined**

Libel *per se* is the publication, expressed in writing or printing, or by signs and pictures which when considered alone without innuendo tends to subject one to ridicule, public hatred, contempt or disgrace, or tends to impeach one in his trade or profession.

**3. Libel and Slander § 5.2— excerpt from memorandum about employee—no libel per se**

A memorandum prepared by a bank vice president was not libelous *per se* where the alleged libel was a short excerpt from a document of about a page and a half which a bank employee furtively observed on the vice president's desk while he was away.

**4. Libel and Slander § 6— memorandum about employee—no name mentioned—reading by another employee—no publication**

Where a bank employee observed an allegedly libelous memorandum on the bank vice president's desk, there was no publication of libel to the bank employee since there was no evidence that the witness knew that the handwritten memorandum which she observed was referring to plaintiff.

**5. Libel and Slander § 10.1— memorandum about employee—qualified privilege**

Evidence was insufficient to support a finding of a publication of libel when a bank vice president forwarded a copy of a memorandum concerning plaintiff to the president of the bank and filed the original with the bank's personnel department, since the vice president was clearly acting under a qualified privilege in these instances; moreover, there was nothing in the record to show that the memorandum was libelous since neither the document itself nor a copy thereof was included in the record and there was no testimony before the jury as to what the typed memorandum contained.

Justice BROCK took no part in the consideration or decision of this case.

APPEAL pursuant to G.S. 7A-30(2) by defendants from decision of the Court of Appeals reported in 37 N.C. App. 506, reversing *Judge Walker's* judgment granting summary judgment in favor of defendants at 26 May 1977 Session of GUILFORD Superior Court.

Plaintiff instituted this action seeking compensatory and punitive damages for libel and blacklisting. There was no evidence offered to support the action alleging blacklisting.

Plaintiff testified that she was hired by defendant Bank as a switchboard operator in October, 1974. Mr. William Black was President of the Bank, and defendant Sharpe, a Vice President of

the Bank, was in charge of the Loan Department. Both plaintiff and defendant Sharpe worked on the lower floor of the Bank. After plaintiff had been employed by the Bank for a short time, she noticed that one of the employees was punching another employee's timecard, and she reported these irregularities to Mr. Sharpe, who told her that this was none of her business. Her relations with Mr. Sharpe had been very pleasant and continued to be so until 24 February 1975. On that date, she decided to talk to Mr. Black concerning the time clock irregularities and, thereupon, went to his office on the upper level of the Bank and advised him of these irregularities. Mr. Black told her that he would talk to Mr. Sharpe immediately. She returned to her work station, and shortly thereafter, Mary Jane Moore, who worked on the upper level of the Bank, came to the switchboard and advised her that Mr. Sharpe had gone to Mr. Black's office. Upon his return to the lower floor, Mr. Sharpe asked her to accompany him to the "coke" room. He appeared to be upset and told her that she had "gone over his head." She told Mr. Sharpe that she had gone to him twice, and he had done nothing. There was an exchange of words in which defendant Sharpe called her a divorcee and told her that he was going to dismiss her. She was then summoned to Mr. Black's office, and he told her that Mr. Sharpe was her supervisor. At about 1:00 o'clock, Mr. Sharpe asked her to accompany him to a conference room located on the upper level of the Bank building where he gave her a check representing two weeks severance pay. He stated that she had done a good job and that she was being discharged because she had "gone over his head." She, thereupon, gathered her personal belongings and left. She further testified that she was out of work for about eighteen months.

Mary Jane Moore testified that she was employed by the Bank during the month of February, 1975, and on one occasion, another employee mentioned to her a paper lying on Mr. Sharpe's desk. She left her place of work on the upper level of the Bank and went to Mr. Sharpe's desk. His desk was situated in a large open area in front of a credenza located against the wall. His chair was between the credenza and his desk, and there was no aisle behind the desk. Upon going to Mr. Sharpe's desk, the witness "glanced" at a handwritten document which was lying on the desk. Mr. Sharpe was not present, and she merely glanced at

the paper because she was uneasy about being there and she did not want to be caught reading materials on his desk. Ms. Moore said that the substance of what she read was, "She gossiped, and she could not get along well with employees, and she was a troublemaker." The witness testified that she did not recall that anyone was named in the document.

Defendant Sharpe testified that he prepared a handwritten document concerning the plaintiff on or about 24 February 1975. He stated, "When I wrote it, I modified it several times. I changed it, struck out, deleted and added to it. It was a document of a page and a half or so." Upon being shown plaintiff's Exhibit 1 for identification, he further testified "as to whether that is in substance the same memorandum as it was in the handwritten form, *in its final draft,* yes." [Emphasis added.] The witness further testified that the handwritten document was destroyed after he received the final typed copy and that a copy of the typed document was given to Mr. Black. The original of the typewritten copy was personally delivered to the Personnel Department for filing by the witness. He had no idea that employees would come to his desk and read papers located on it. Neither did he have any idea as to what stage his draft of the handwritten document was in when Mary Jane Moore looked at it.

The typewritten document, identified as plaintiff's Exhibit 1, was offered into evidence by the plaintiff, and defendants' objection to its admission was sustained. Plaintiff did not except to or assign as error the ruling sustaining defendants' objection.

At the close of plaintiff's evidence, defendants moved for a directed verdict pursuant to Rule 50(a), and the motion was allowed on the ground that plaintiff's evidence was not sufficient to carry the case to the jury.

*Smith, Patterson, Follin, Curtis, James & Harkavy, by Norman B. Smith, Michael K. Curtis, and Melinda Lawrence, attorneys for plaintiff appellee.*

*Nichols, Caffrey, Hill, Evans & Murrelle, by William L. Stocks and Robert D. Albergotti, attorneys for defendant appellants.*

BRANCH, Justice.

A motion for a directed verdict pursuant to Rule 50(a) presents the same question as did a motion for nonsuit prior to the adoption of the New Rules of Civil Procedure. The question is whether the evidence presented is sufficient to carry the case to the jury. *Kelly v. Harvester Co.*, 278 N.C. 153, 179 S.E. 2d 396 (1971). In passing on this motion, the trial judge must consider the evidence in the light most favorable to the non-movant, and conflicts in the evidence together with inferences which may be drawn from it must be resolved in favor of the non-movant. The motion may be granted only if the evidence is insufficient to justify a verdict for the non-movant as a matter of law. *Kelly v. Harvester Co., supra.*

[1]   There are three classes of libel. They are: (1) publications obviously defamatory which are called libel *per se;* (2) publications susceptible of two interpretations one of which is defamatory and the other not; and (3) publications not obviously defamatory but when considered with innuendo, colloquim, and explanatory circumstances become libelous, which are termed libels *per quod.* In an action upon the second class, it is for the jury to determine whether, under the circumstances, the publication was defamatory and was so understood by those who saw it. In publications which are libelous *per quod,* the innuendo and special damages must be alleged and proved. *Flake v. News Co.*, 212 N.C. 780, 195 S.E. 55 (1938). Here we are not concerned with the second class since the language allegedly published was clear and unambiguous. Neither do we further consider libel *per quod* since plaintiff failed to prove special damages. We are, however, concerned with the question of whether there was a publication of a libel *per se* and, therefore, deem it necessary to further define that term.

[2]   Libel *per se* is the publication, expressed in writing or printing, or by signs and pictures which when considered alone without innuendo tends to subject one to ridicule, public hatred, contempt or disgrace, or tends to impeach one in his trade or profession. It is not essential that the words involve an imputation of crime, moral turpitude or immoral conduct. *Kindley v. Privette*, 241 N.C. 140, 84 S.E. 2d 660 (1954); *Flake v. News Co., supra; Broadway v. Cope*, 208 N.C. 85, 179 S.E. 452 (1935). When a

publication is libelous *per se*, a prima facie presumption of malice and a conclusive presumption of legal injury arise entitling the victim to recover at least nominal damages without proof of special damages. *Stewart v. Check Corp.*, 279 N.C. 278, 182 S.E. 2d 410 (1971).

[3]   The only evidence of libel offered by plaintiff consisted of the words from a document which the witness Mary Jane Moore furtively observed while Mr. Sharpe was away from his desk. She testified:

> . . . I stepped to the desk and I did not touch the document. I glanced down at it. To the best of my knowledge and recollection, it said something to the effect that she gossiped and she could not get along well with employees and that she was a troublemaker. . . .

The Court of Appeals in holding that this language constituted libel *per se* relied on several North Carolina cases. The most supportive cases are *Pentuff v. Park*, 194 N.C. 146, 138 S.E. 616 (1927), and *Kindley v. Privette, supra.*

In *Kindley*, the pastor of Southside Baptist Church of Concord, North Carolina, said in essence that plaintiff, a minister and member of that church, had been a disorderly member thereof in the sense that he was unwilling to cooperate in maintaining peace and the right spirit in the church but caused trouble amounting to a continuous upheaval and disruption of the peace and harmony of the church. This Court held this language to be libelous *per se.*

In *Pentuff*, a newspaper editorial was held to be libelous *per se* which said of plaintiff, an ordained minister, "There has not, to our knowledge, appeared in public within the memory of the present generation of North Carolinians, a more ignorant man . . . or one less charitable towards men who might honestly disagree with him."

In instant case, the alleged libel was a short excerpt from a document of about a page and a half. The remainder of the document might well have reflected the writer's opinion that even with her failings, plaintiff was a skilled, efficient and loyal employee. Therefore, on this record, we cannot say that the evidence shows libel *per se*. However, there are more compelling reasons which lead us to reverse the decision of the Court of Appeals.

[4]    There is no basis for an action for libel unless there is a publication of the defamatory matter to a person or persons other than the defamed person. *Taylor v. Jones Brothers Bakery*, 234 N.C. 660, 68 S.E. 2d 313 (1951). Under the facts of instant case, we agree with that portion of the Court of Appeals' decision which holds that there was no publication of libel to the witness Moore since there was no evidence that the witness knew that the hand-written memorandum which she observed was referring to plaintiff. In fact, the words alleged to be libelous might well have referred to other employees of the Bank.

In order for defamatory words to be actionable, they must refer to some ascertained or ascertainable person and that person must be the plaintiff. If the words used contain no reflection on any particular individual, no averment can make them dafamatory. *Nordlund v. Consolidated Electric Co-Op*, 289 S.W. 2d 93 (Mo. 1956); 53 C.J.S. *Libel and Slander* § 11.

[5]    We next consider whether there is evidence to support a finding of a publication of libel when Mr. Sharpe forwarded a copy of the document to Mr. Black, the President of the Bank, and filed the original with the Bank's Personnel Department.

It is clear that Mr. Sharpe was acting under a qualified privilege in these instances since he was acting in a matter in which he had an interest as an employee of the Bank, and it was his duty to communicate such information to his superior and to make it a part of the Bank's personnel records. Under these cir-cumstances, there could be no basis for an action in libel unless defendant Sharpe acted with actual malice. *Stewart v. Check Corp., supra.* However, we need not consider the question of malice or qualified privilege for the simple reason that there is nothing in this record to show that the memorandum com-municated to Mr. Black and filed in the Personnel Department was libelous. The instrument allegedly containing the libel is not a part of the record. A typewritten document was shown to the witness Mary Jane Moore, but she never testified before the jury as to any similarity between the typed memorandum and the handwritten document which she viewed for a few seconds. Mr. Sharpe testified that the typewritten document was in substance the same as the *final draft* of the handwritten memorandum. However, he further testified that he modified, deleted and added

to the original handwritten memorandum before it was reduced to typewritten form. The record does not disclose whether the witness Moore saw the original handwritten memorandum or the changed and modified final form of that instrument. For these reasons, we cannot know what appeared in the typewritten document. Thus, plaintiff has failed to show a publication of libel by the delivery of the typewritten document to Mr. Black or by filing the document with the Bank's Personnel Department.

We hold that the evidence in this case was insufficient to justify a verdict for the plaintiff as a matter of law. The trial judge, therefore, correctly granted defendants' motions for a directed verdict.

The decision of the Court of Appeals is

Reversed.