Ralph U. KROHNGOLD, Plaintiff,

v.

NATIONAL HEALTH INSURANCE COMPANY, et al.

No. 90–580–CIV–T–15B.

United States District Court, M.D. Florida, Tampa Division.

Feb. 18, 1993.

---

Alex D. Barker and Thomas F. Woods, Gatlin, Woods, Carlson & Cowdery, Tallahassee, FL, for plaintiff.

Lewis F. Collins, Jr., Dickinson, Gibbons, Shields, Partridge, Dahlgren & Collins, P.A., Sarasota, FL, for defendants.

### ORDER GRANTING SUMMARY JUDGMENT

MERRYDAY, District Judge.

This is a libel action in which the defendants seek summary judgment. (D–22) Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In evaluating motions for summary judgment, fact issues are resolved pre-emptively in the manner most favorable to the non-moving party. *United of Omaha Life Ins. v. Sun Life Ins. Co.,* 894 F.2d 1555, 1558 (11th Cir.1990).

The parties stipulate to the following facts. (D–47) In January, 1988, Krohngold was appointed as an agent of National Health Insurance Company ("National"). On November 27, 1989, National sent a letter to 214 of National's insureds. Krohngold claims that National libeled him in the letter. The letter informed each insured that Krohngold was no longer an agent with National and identified the new agent for their account. The letter states:

> We appreciate your trust as a valued policyholder of National Health Insurance

Company. Since we are concerned about our customers, we are writing to alert you to a situation that could affect your eligibility for hospital-surgical insurance benefits.

The agent from whom you purchased your present National Health Insurance policy, Ralph Krohngold, no longer represents our Company. Due to your agent's leaving, our Regional Manager in your area, Bob Bodkin will now service your needs. Rest assured your coverage with National Health will continue with no changes whatsoever, provided you keep your coverage in force.

Please be aware that as some agents leave one insurance company and begin to work for another, they make it a practice to build their business by contacting former customers in an attempt to "roll" them into coverage with their new insurance company. This replacement practice is unlawful and could result in a loss of benefits. Another company may deny claims under a new policy due to waiting periods and limitations for "pre-existing conditions". These claims probably would have been payable under their original coverage with National Health, had it remained in force.

Should Ralph Krohngold contact you and attempt to replace your present National Health Insurance policy, please call us immediately so we can assist you in protecting your insurance benefits.

If you have any concerns about your coverage or questions about other benefits available through USA For Health Care or National Health Insurance Company, call Bob Bodkin at our regional office 813–449–2000. If you are unable to reach them, feel free to call our Home Office directly at 1–800–747–1900, ext. 405.

The defendants contend that their letter contains neither a falsehood nor an accusation of wrongful conduct. They further claim that Krohngold cannot prove the special damages necessary to recover under libel *per quod* and that, absent malice, Krohngold cannot overcome the defendants' qualified privilege. Krohngold attempts no proof of special damages and bases his suit exclusively on the theory of libel *per se*.

In order for a publication to be libelous *per se*, the publication considered alone and without innuendo (1) must tend to subject a person to hatred, distrust, ridicule, contempt, or disgrace; 2) must tend to injure a person in a trade or profession; or 3) must attribute to a person either conduct, characteristics, or conditions incompatible with the proper exercise of a lawful business, trade, profession, or office. *Perry v. Cosgrove*, 464 So.2d 664 (Fla. 2d DCA 1985); *Barry College v. Hull*, 353 So.2d 575 (Fla.1977). If the plaintiff demonstrates that the publication was facially libelous, no proof of special damages is necessary. *Layne v. Tribune Co.*, 108 Fla. 177, 146 So. 234, 236 (1933).

The defendants contend that the letter contains no false or defamatory statement, an essential element of libel. The existence of libel under these circumstances depends upon whether the statement is reasonably subject to defamatory interpretation. *Keller v. Miami Herald Pub. Co.*, 778 F.2d 711 (11th Cir.1991). If a publication is subject only to one interpretation, the Court determines whether the statement is defamatory. However, if the publication is ambiguous or subject to divergent interpretation, an issue exists that precludes summary judgment. *Perry v. Cosgrove*, 464 So.2d 664, 666 (Fla. 2d DCA 1985).

A judicious reading of the insurer's letter yields only one interpretation, which is not defamatory. Part X of Chapter 626, Florida Statutes, regulates unfair insurance trade practices. Part X prohibits any "unfair method of competition or an unfair or deceptive act or practice involving the business of insurance." Penalties are prescribed for violations. Included among the prohibited acts of unfair and deceptive insurance practice is "twisting," which is sometimes called "rolling" in insurance matters. Section 626.-9541(1)(a), Florida Statutes, states that the unfair and deceptive practice of "twisting" is:

> Knowingly making any misleading representations or incomplete or fraudulent comparisons or fraudulent material omissions of or with respect to any insurance policies or insurers for the purpose of inducing, or tending to induce, any person to lapse, forfeit, surrender, terminate, retain,

pledge, assign, borrow on, or convert any insurance policy or to take out a policy of insurance in another insurer.[1]

Allowing for the substitution of the term "roll" for the more commonly used term "twist," the letter is accurate. The letter ascribes the illegal act of rolling to "some agents" but carefully avoids any suggestion that Krohngold is culpable. In fact, the letter is remarkable only to the extent that it is manifestly crafted with the conscious objective of avoiding any accusation against Krohngold. Insureds who received this letter would have no reasonable cause attributable to National to lessen their opinions of Krohngold.

Krohngold's complaint in this action contains a grievance on his part that is better addressed to the legislative branch, which has identified a category of individuals (specifically, insurance salespeople changing companies) whose behavior is likely to run afoul of the legitimate interests of the legislature in preserving insurance coverage against inadvertent lapses, gaps, and the like. Florida's legislative authority has acted to outlaw "rolling" and "twisting," a prohibition not uncommon in the United States.[2] Presumably, this prohibition arises from the vulnerability of consumers confronted with a skewed and unilateral sales effort by an informed salesperson who seeks to benefit personally by converting established customers from the coverage offered by a former employer to the coverage offered by a new employer. The statute directs penalties toward those who accomplish the "rolling" or "twisting" of insurance coverages by selective revelation of favorable information or deceptive withholding of unfavorable information about competing insurers and their offerings.

The existence of the "rolling" and "twisting" statute evidences a pronounced legislative concern with the preservation of insurance coverage. More particularly, the statute views with noteworthy suspicion a class of salespeople to which Krohngold belongs, i.e., salespeople who are changing companies and who may wish to lure their former clients toward their new affiliation. Krohngold's complaint actually arises in the first instance from the legislature's including him in a class of people whose behavior is suspect and subject to penalty. Krohngold's complaint against National is only peripheral to or derived from the primary fact that the legislature has included him in a suspect class. National merely called the attention of its insureds to the legislative classification and requested precisely that for which the statute is designed—an opportunity to directly address its insureds on the issues arising from the consumer's prospective conversion of insurance coverage from one insurer to another. Absent a fairly ascertainable and false accusation of malefaction by Krohngold, National's more or less bland resort to the statutory classification, to the opportunity to disperse information among its insureds, and to the goal of frustrating the legislatively identified evil of "rolling" or "twisting" is not reasonably susceptible to characterization as defamatory.

■ The "rolling" and "twisting" prohibition enacted in Florida and elsewhere aims to prevent consumers' unwary exposure to a fraudulent practice, which can result in inadvertent economic trauma. Neither the legislature nor the enforcement agency can monitor the daily behavior of countless agents as they move from company to company and as they feature this and then that insurance product as the bargain of the day. The only practical mechanism for enforcement is the vigilant self-interest of insurers as they seek to preserve their base of established customers. The question logically recurs whether an insurer must remain silent until the prohibited behavior occurs or whether an insur-

1. This section is elucidated and implemented at Chapter 4–9.002, Fla.Admin.Code, which provides:

    Twisting is declared to be unethical. No person shall make any misleading representations or incomplete or fraudulent comparison of any insurance policies or insurers for the purpose of inducing, or tending to induce, any person to lapse, forfeit, surrender, terminate, retain, or convert any insurance policy, or to take out a policy of insurance in another insurer.
    Specific Authority 624.308 FS. Law Implemented 626.797, 626.9541(12) FS. History–Repromulgated 12–24–74, Formerly 4–9.02.

2. Couch, *Couch on Insurance 2d.* § 26A:304 (1984).

er may initiate contact with its insureds in an effort to inform them of the state of the law and the nature of the legislatively identified risk to which they are subject.

If an insurer must stand silent and await injury to its insureds because of unlawful "rolling" and "twisting," the initial and perhaps the entire cost of impinging the legislature's policy is visited upon the most innocent participant in the insurance transaction—the uninformed policyholder. However, if an insurer enjoys the right to contact its insureds and pre-emptively inform them of the state of the law, i.e., before they are subject to the irreversible and detrimental effects of "rolling" and "twisting," the cost of the legislative policy, if there is any cost at all, is the minuscule cost of the tangential implication that a particular agent may transgress the law, an implication apparent from the nature of the "rolling" and "twisting" statute. Of course, that cost equals zero if the agent is not actually "rolling" or "twisting."

Viewed from the vantage of that equation, the answer is plain. An insurer need not stand silent and await unlawful behavior by a former agent. An insurer may inform policyholders of the legislatively identified dangers of "rolling" and "twisting" and, absent unwarranted and false allegations of misbehavior against a former agent, an insurer may request that policyholders, if contacted by the former agent, seek from the insurer a balancing portrayal of the relative merits of available coverage. In this case, National's letter to its policyholders does no more than that, and the legislative enactment contemplates nothing less. An insurer may disperse information; an insurer may not randomly accuse the innocent with impunity. A fair reading of the letter in question commands the conclusion that, in this case, National has engaged in only the former.

Therefore, the Court finds as a matter of law that National's letter was not libelous *per se*. No need exists to consider whether the defendants exceeded their qualified privilege in sending the letter.

Accordingly, the Court ADJUDGES that the defendants' motion for summary judgment (D–22) is GRANTED, and the Clerk is directed to enter final judgment for the defendants and against the plaintiff.

ORDERED.