**ATAMU MATAMUA, Plaintiff**

**v.**

**CARIBBEAN FISHING CO. and CARLOS SANCHEZ, Defendants.**

High Court of American Samoa
Trial Division

CA No. 34-99

April 11, 2000

Before RICHMOND, Associate Justice, ATUILAGI, Associate Judge, and TAUANU`U, Associate Judge.

Counsel: For Plaintiff, William H. Reardon
For Defendants, Roy J.D. Hall, Jr.

## OPINION AND ORDER

### Procedural History

Plaintiff Atamu Matamua ("Matamua") filed a complaint on April 28, 1999, alleging that defendant Caribbean Fishing Company ("CFC"), through its manager defendant Carlos Sanchez ("Sanchez") defamed him. CFC and Sanchez answered on May 14, 1999, and the trial began on November 30, 1999. The trial record was held open in order to admit, by deposition or testimony, evidence provided by witnesses who were

then at sea on fishing trips. Captain George Souza's deposition was taken on December 13 and 21, 1999 and added to the trial record. Trial closed on February 22, 2000, with closing arguments from both parties. Matamua submitted a written summation on the same day. CFC and Sanchez replied in writing on February 25, 2000.

## Facts

CFC manages a fleet of purse seiner fishing vessels that are owned by StarKist Samoa ("SKS") and supply its cannery with fish for packing. Sanchez is CFC's General Manager. At the time of the events at issue, Matamua was employed as a winch operator on the F/V Taimane ('the Taimane"), a purse seiner vessel managed by CFC. It appears that Matamua had worked between three and five trips on the Taimane at the time he left that vessel's employ.

The alleged defamatory statement was published in a fax authored and distributed by Sanchez on CFC's behalf to SKS's vessels on December 12, 1998. This statement was published by fax to all the boats in the SKS fleet to inform crew members that they were allowed to take only one fish from the vessel when it arrived in port. The following sentences comprised the allegedly defamatory statement: "For example, I was told recently that a Taimane crewmember by the name of Atamu took two truck loads of fish and sold this fish. This is an illegal practice."

Although the statement only relays what Sanchez was purportedly told by a Taimane crewman, Sanchez testified at trial that he saw Matamua riding in a pickup truck, with an unspecified number of fish in the bed, as it left the port compound. The truck was allegedly pointed out to him by a member of the American Samoa Government's Department of Port Administration. After seeing the truck, Sanchez proceeded to the Taimane and asked if anyone had taken fish off the boat. It was then that a crewmember allegedly told him that Matamua had done so.

Matamua asserts that he was fired as of the date of the alleged defamatory statement, while CFC and Sanchez argue that Matamua was simply not rehired for another contract. Matamua last fished on the Taimane on the trip begun approximately October 2, 1998, during which he was paid $6.50 per ton as a winch man. Matamua testified that all the fish had been unloaded as of the date of the events in question, which means that the trip for which he had contracted was at an end. Matamua, however, maintains that crewmembers would make a number of trips on one contract, and that he would have been rehired on the Taimane had not Sanchez instructed Captain Souza of the Taimane not to rehire him. Sanchez and the captain denied this allegation and asserted that Matamua was not rehired because the captain had secured the services of another winch man for the next voyage. Since then, Matamua has not

worked on the Taimane or other SKS vessels, but he has taken three voyages on another purse seiner.

## Analysis

Before we reach the heart of the defamation case before us, we must dispose of two tertiary issues.

### A. Constitutional Issues

Matamua opens his trial summation quoting Article I, Section 4 of the Revised Constitution of American Samoa, regarding the dignity of an individual. CFC and Sanchez take issue with this citation and argue that a constitutional claim is untenable. We do not see where any constitutional violations were pled, however, and the quotation appears to be included for rhetorical, rather than legal, effect. There being no allegation of a constitutional violation, we need not address this issue further.

### B. Joinder of Parties

Matamua moved, at the close of trial, to add SKS as a defendant. He cites this Court's recent decision in *McConnell Dowell (Am. Samoa) Ltd. v. American Samoa Power Authority*, 4 A.S.R.3d 102 (Trial Div. 2000), as supporting this late addition. That order allowed the plaintiff to amend its complaint to properly name a defendant. The order, and T.C.R.C.P. 15 upon which it is based, are entirely inapplicable to the present case for two reasons. First, the improperly named defendant in that case was already a party to the suit, while in this case SKS was never a party. Second, the amendment in that case was allowed during the initial stages of the lawsuit. Here Matamua is attempting to add a defendant after the conclusion of trial. T.C.R.C.P. 21 controls the addition of parties, and allows the court to add parties at any stage in the proceeding only "on such terms as are just." Adding SKS at this late date, and providing it no chance to defend against the plaintiff's claims, is anything but just. The motion to join SKS as a defendant is accordingly denied.

### C. Defamation

A.S.C.A. § 43.5201(1) defines defamation, for purposes of this action, as "libel which is a false and unprivileged publication by writing . . . which exposes any person to hatred, contempt, ridicule, or obloquy or which causes him to be shunned or avoided or which has a tendency to injure him in his occupation." The Second Restatement of Torts is helpful in defining defamation in that it contains all the requirements of the above definition, but lays them out in a more organized fashion at §

558. Breaking down these requirements into single elements produces the following checklist for finding liability for defamation:

(1) A false
(2) and defamatory
(3) statement concerning the plaintiff,
(4) that is unprivileged,
(5) made to a third party,
(6) with fault amounting to at least negligence on the part of the publisher,
(7) and either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement.

The third and fifth elements are clearly established. The statement named Matamua and was distributed to every ship in the SKS fleet. The other elements of the cause of action, however, require further analysis.

*1. Falsity*

In the case of a private plaintiff in a matter not of public concern and not involving the news media, the defendant has the burden of proving the truth of a defamatory statement as an affirmative defense. *Borg v. Boas*, 231 F.2d 788, 792 (9th Cir. 1956). Moreover, where, as here, a defendant repeats a statement attributed to another, he must establish the truth of the statement he repeated because one who repeats a defamatory statement endorses it. *Id.* at 792-793. Thus, it does not suffice for Sanchez to assert that he accurately reported in the fax what he had been told by a crewmember. This is not the truth at issue. Rather, Sanchez must prove that Matamua did in fact take and sell two truck loads of fish.

Testimony regarding the truth of the statement was inconclusive at best. Sanchez says he saw Matamua in a truck containing fish leaving the port compound, but this fact does not establish that he took the fish. Perhaps Matamua was only a passenger. CFC and Sanchez did not establish that Matamua took two truckloads of fish. Similarly, they did not substantiate that he sold fish at any point. CFC and Sanchez have not met the burden of proving the affirmative defense of truth. The first element of falsity is present, and we move on to the second element.

*2. Defamatory Meaning*

To discern whether a statement is defamatory, a court should look to the impression it would naturally produce in the average reader among whom it was intended to reach. *Weinstein v. Bullick*, 827 F. Supp. 1193, 1197 (E.D. Pa. 1993). Sanchez accused Matamua of committing an

illegal act in the statement at issue. Even if other crewmembers had acted similarly in the past, they could not help but get the impression from this communication that Matamua committed a wrongful act. Statements made by employers that attack the honesty, integrity, or competence of employees are defamatory, and can give rise to an action for defamation if not true or protected by privilege. A.S.C.A. § 43.5201(1) ("a false and unprivileged publication by writing . . . which has a tendency to injure him in his occupation" is defamation); *see also Gould v. Md. Sound Indus., Inc.*, 37 Cal. Rptr. 2d 718, 728 (Cal. Ct. App. 1995) (statement that employee had made large error in bidding was defamatory because it would tend to injure the employee by imputing incompetence). The second element of defamatory meaning is established.

*3. Privilege*

■ CFC and Sanchez assert that the fax was protected by the common interest privilege. A.S.C.A. § 43.5202(3) applies the common interest privilege to statements made "in a communication without malice to a person interested therein by one who is also interested."

First we analyze whether the privilege pertains to this case. Interested parties have been held to include supervisors and employees. *Babb v. Minder*, 806 F.2d 749, 754 (7th Cir. 1986). Sanchez asserts that the fax was published in order to protect the common interest of the employees, i.e. preventing them and their company from incurring the wrath of the port authorities for conducting illegal activities. Thus, the setting and purpose of the fax argues for it being privileged.

■ The common interest privilege is conditional, however, and may be lost upon a showing of abuse, malice, or a reckless disregard for the truth. *Coastal Abstract Serv. v. First Am. Title*, 173 F.3d 725, 735-736 (9th Cir. 1999). Malice on Sanchez's part, and thus of CFC, was not demonstrated at trial. Sanchez testified that he did not name Matamua in the fax in order to hurt him, and Matamua was unable to establish this motive in Sanchez's action.

■ Sanchez's conduct in including this unsubstantiated statement impugning Matamua did, however, constitute an abuse of the common interest privilege. Courts have extended the privilege to protect statements relating to current and former employees, but only when they were reasonably calculated to protect a common interest of the employer and employees. *See, e.g., Deaile v. Gen. Tel. Co. of Cal.*, 115 Cal. Rptr. 582 (1974). The privilege is forfeited when the statement includes matters that have no bearing on the interest sought to be protected. *Id.* The statement in this case was completely unnecessary to the promulgation of the one-fish policy. *See generally Fou v. Talofa Video*, 2 A.S.R.3d 152 (Trial Div. 1998). Thus, the statement implicating

Matamua was not privileged.

■ In addition to abusing the privilege, Sanchez, and thus CFC, demonstrated a reckless disregard for the truth of the statement. Although Sanchez saw Matamua in a truck with fish, and heard that Matamua had taken some fish from another crewmember, he made no effort to ascertain whether it was Matamua that had taken the fish (rather than the driver), how many fish were taken, and whether any of the fish were sold. Alleging that Matamua had committed an illegal act on such a flimsy basis, without any further investigation, is conduct that rises above mere negligence and demonstrates a callous disregard for Matamua's reputation. *See, e.g., Coastal Abstract Serv.*, 173 F.3d at 736 (defendant demonstrated reckless disregard by failing to check accuracy of statement); *Babb*, 806 F.2d at 749 (manager acted with reckless disregard of truth or falsity of statements, having made no investigation of allegations regarding former employee). The common interest privilege is accordingly unavailable to protect the communication in the present case.

*4. Fault*

Most states require a private plaintiff to prove negligence to recover for defamation. *Brown v. Kelly Broad. Co.*, 771 P.2d 406, 424 n.26 (Cal. 1989) (citing 33 states as clearly adopting a negligence standard for private-figure plaintiffs). Having found that the statement was made with reckless disregard for its effect on Matamua, this clearly amounts to culpability equaling or exceeding a negligence standard. The sixth element is proven.

*5. Actionability*

■ We turn last to the issue of whether the statement is actionable with or without the proof of damages. To begin, there are three categories of damages to which victims of defamation may be entitled: compensatory, nominal, and punitive. Compensatory damages are further divided into two classes, these being general (those which the law presumes to be the natural and proximate result of the publication, including loss of reputation and emotional distress) and specific (damages that, while a probable result of the defamation, are not assumed and must be proved). 50 AM. JUR. 2D *Libel and Slander* §§ 374 & 375 (1995).

■ In an ordinary action for defamation, special damages must be proven before the plaintiff is allowed any recovery. *See Partington v. Bugliosi*, 825 F. Supp. 906, 915 (D. Haw. 1993). However, a statement that is libel per se is actionable without proof of special damages. *Id.*

■ CFC and Sanchez argue that allegations of criminal, and not merely

133

illegal conduct, are required to establish libel *per se*. This is a correct statement, but treats only one category of statements constituting libel *per se*. Many jurisdictions also hold that in an employment context, an attack on the honesty or competence of an employee endangers his position, and is actionable *per se*. *See, e.g., Id.; Khrongold v. Nat'l Health Ins. Co.*, 825 F. Supp. 996 (M.D. Fla. 1993); *Sleem v. Yale Univ.*, 843 F. Supp. 57 (M.D. N.C. 1993); *Washer v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 136 P.2d 297 (Cal. 1943).

■ Furthermore, irrelevant matter in a communication otherwise privileged may be held libelous *per se*. *Corrigan v. Macloon*, 22 F.2d 520 (9th Cir. 1927). Agreeing with the above precedent, we find that the statement was libelous *per se*.

■ The first consequence of this determination is that general damages, including injury to reputation and emotional distress, are presumed. *See Dun & Bradstreet v. Greenmoss Builders*, 472 U.S. 749, 761 (1985). The second is that punitive damages may be awarded absent a showing of actual malice on the part of the defendants. *Id.* With libel *per se*, the showing of reckless disregard in the present case suffices to impose punitive damages in order to penalize CFC and Sanchez and deter them from similar conduct in the future.

Matamua must, however, prove special damages in order to recover them. Special damages are those that are not assumed to be the necessary or inevitable result of the defamation. In this case, the special damages sought by Matamua appear to be comprised of compensation for the differences in wages he earned resulting from not being rehired as winch man on the Taimane. Captain Souza may have been influenced by the defamation when he decided to hire another winch man. However, Matamua has failed to show by a preponderance of the evidence that this factor controlled the captain's decision. Likewise, Matamua is employable on other purse seiners and has not satisfactorily proven that the defamation has actually prevented his employment on other purse seiners equal to or higher than the winch operator's rate he received on the Taimane. Therefore, Matamua will not recover special damages on this claim.

## Order

CFC and Sanchez shall jointly and severally pay Matamua general damages for injury to reputation and emotional distress in the amount of $2,500 and punitive damages in the amount of $2,500, for a total of $5,000.

It is so ordered.